```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____
```

In re:

JAY HALPERYN (aka Tyler
Halperyn, aka Tyler Jay
Halperyn),

                        Debtor.

CASE NO. 04-20226

DECISION & ORDER

```
_____
```

UNITED STATES TRUSTEE,

                        Plaintiff,

           V.                        AP NO. 04-2144

JAY HALPERYN,

                        Defendant.

```
_____
```

## BACKGROUND

On January 21, 2004, Jay Halperyn, aka Tyler Halperyn, aka Tyler Jay Halperyn ("Halperyn"), filed a petition initiating a Chapter 7 case, and Peter Scribner was appointed as Halperyn's Chapter 7 case trustee (the "Trustee").

On February 4, 2004, Halperyn filed the Schedules and Statements required to be filed by Section 521 and Rule 1007 (the "Initial Schedules" and "Initial Statement of Affairs"), which indicated that: (1) he was employed as a manager at Style de Vie, earning a monthly income of $800.00; (2) he did not own an automobile (Schedule B, Item 23); (3) he had $172,949.00 in

unsecured priority tax claims; (4) he had $2,365,553.00 in unsecured nonpriority claims, which included $126,000.00 due to American Express, $269,436.00 due to General Electric Capital Corporation on a judgment, $266,741.00 due to Kenneth P. Hughes on a judgment, $1,200,000.00 due to Key Bank National Association on several judgments, and $347,668.00 due to Telmark LLP on a judgment; (5) he had no stock or interests in incorporated or unincorporated businesses (Schedule B, Item 12); (6) he had not transferred any property outside the ordinary course of business in the year immediately preceding the filing of his Chapter 7 case (Initial Statement of Affairs, Question 10a); and (7) there were no businesses in which he: (a) was an officer or director; or (b) owned 5% or more of the voting or equity securities, within the six years immediately preceding the filing of his Chapter 7 case (Initial Statement of Affairs, Question 18a).

After the Trustee conducted a March 17, 2004 Meeting of Creditors, Halperyn filed an Amended Statement of Affairs (the "Amended Statement of Affairs"), signed on May 7, 2004, which, at Question 18a, set forth six businesses he had been involved with that he indicated closed in the year 2000.[1]

---

[1] Halperyn had disclosed this information at the Meeting of Creditors.

**Page 2**

On August 20, 2004, the Office of the United States Trustee (the "UST") commenced an Adversary Proceeding which requested that the Court deny Halperyn's discharge pursuant to Section 727.

The Complaint in the Adversary Proceeding set forth a detailed history of Halperyn's involvement in: (1) twenty-three different investment funds, vehicles, businesses and trusts during the 1990's, which he disclosed at the Meeting of Creditors; and (2) Style de Vie, an antiques and collectibles business in Palm Beach, Florida, allegedly owned by his sister, Cheryl Halperyn.

The Complaint further alleged that: (1) Halperyn had an ownership interest, legal or equitable, in the inventory at the Style de Vie store, which was originally owned by him but was allegedly transferred to his mother, Ruth Halperyn, or the Ruth Halperyn Family Trust in satisfaction of loans alleged to have been made by Ruth Halperyn to Halperyn or business entities for which Halperyn had guaranteed the loans; (2) Halperyn had failed to disclose on his Initial or Amended Statement of Affairs the transfer of a $13,000.00 Mercedes (the "Mercedes") within the twelve months prior to the filing of his Chapter 7 case (Question 10a indicated that there were no transfers); (3) Halperyn had failed to disclose on his Initial Statement of Affairs all of the business entities he was involved with during the six years prior to the filing of his Chapter 7 case, as well as various aliases and

social security numbers he had used; (4) in addition to various false oaths and accounts in his Initial Schedules and Initial and Amended Statement of Affairs, Halperyn had made additional false oaths during his testimony at his Meeting of Creditors; (5) Halperyn had failed to disclose his legal or equitable ownership in Style de Vie and/or of all or a portion of the inventory at the Style de Vie store; and (6) Halperyn had failed to keep and provide sufficient records in connection with the transfer of his art and antiques collection to Ruth Halperyn and/or the Ruth Halperyn Family Trust.

Halperyn interposed a September 20, 2004 general denial to the Complaint in the Adversary Proceeding.

After: (1) the UST conducted a 2004 Examination of Halperyn on June 6, 2005 (the "Examination"); (2) the Court conducted a number of pretrial conferences; (3) the Court denied a UST Motion for Summary Judgment; and (4) the UST made a Motion for Leave to Amend the Complaint to add a cause of action under Section 727(a)(3) to allege a failure by Halperyn to preserve sufficient books and records in connection with his alleged transfer of the Mercedes, which was granted by the Court, a trial of the Adversary Proceeding was conducted on May 17, 2006 and June 8, 2006 (the "Trial"). During the Trial, the UST requested that its Section 727(a)(4)(A) false oath causes of action be expanded to include the

**Page 4**

failure of Halperyn to list Rayfield Investment Company ("Rayfield Investment") as a creditor. That Motion was also granted by the Court. A further Amended Complaint was filed on July 19, 2006, pursuant to Rule 7015(b), in order to conform the alleged causes of action to the evidence presented at Trial by Rayfield.

At the Trial, the Trustee, Cheryl Halperyn and Herbert Eugene Rayfield ("Rayfield") testified. Halperyn elected not to attend the Trial or to testify in connection with any of the documentary evidence produced by the UST or the testimony of the Trustee, Cheryl Halperyn or Rayfield.

## DISCUSSION

### I. The Trial

The Court found the following testimonial and documentary evidence produced at Trial to be critical in connection with its determination as to whether to deny Halperyn's discharge under Section 727: (1) Cheryl Halperyn's unconvincing testimony that she was the sole legal and equitable owner of Tyler Jay Art, Antiques and Collectibles, Inc. ("Tyler Art") d/b/a Style de Vie, notwithstanding that the corporate minute book produced by Halperyn's counsel indicated that she was the sole stockholder; (2) Cheryl Halperyn's testimony that both before and after the filing of Halperyn's Chapter 7 case, the operating funds of the Style de

Vie store operations were run through a checking account maintained by Hyperion LLC ("Hyperion"), an undisclosed corporation owned by Halperyn and his son; (3) the corporate minute books of Tyler Art, which indicated that Halperyn was the original President of the corporation, and did not indicate that any further actions were taken by the corporation or its Board of Directors to replace Halperyn as the President; (4) Tyler Art was indebted to Rayfield Investment for approximately $300,000.00 as the result of loans made prior to and subsequent to the commencement of Halperyn's Chapter 7 case, and with respect to at least a $125,000.00 loan made on or about October 24, 2003, prior to the filing of Halperyn's Chapter 7 case, Halperyn signed as the Vice President of Tyler Art and as a co-debtor, so that he was personally liable, jointly and severally, on the loan, which was unpaid when Halperyn filed his petition; (5) Rayfield testified that in connection with the loans made by Rayfield Investment to Tyler Art, Halperyn on numerous occasions had represented to him, as the sole shareholder of Rayfield Investment, that Halperyn was the owner of Tyler Art; and (6) Rayfield testified that in early 2004 Halperyn advised him that he had hired Tom Davis, who owed Tyler Art a significant amount of money, to go to Rochester to pick up his Mercedes and bring it back to Palm Beach.

BK. 04-20226
AP. 04-2144

II. <u>**Section 727(a)(4)(A) Cause of Action**</u>

   A. <u>**Statute and Case Law**</u>

Section 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless -

   (4) the debtor knowingly and fraudulently, in or in connection with the case -

      (A) made a false oath or account[.]

11 U.S.C. § 727 (2006).

From the cases which have been decided under Section 727(a)(4)(A), including this Court's Decisions & Orders in *In re Pierri,* Ch. 7 Case No. 97-20461, A.P. Case No. 97-2125 (W.D.N.Y. April 21, 1998), *In re Wackerman,* (Chapter 7 Case No. 99-20709, W.D.N.Y. November 27, 2000), In *re Ptasinski* (Chapter 7 Case No. 02-20524, A.P. Case No. 02-2172, W.D.N.Y., February 13, 2003) ("*Ptasinski*"), *In re Weeden* (Chapter 7 Case No. 02-23812, A.P. Case No. 03-2003, W.D.N.Y. February 17, 2004), *In re Foxton* (Chapter 7 Case No. 04-22377, A.P. Case No. 04-2154, W.D.N.Y. April 12, 2005), *In re Mondore* (Chapter 7 Case No. 04-21316, A.P. Case Nos. 04-2124 and 04-2130, W.D.N.Y. June 14, 2005), *In re Hutchinson* (Chapter 7 Case No. 04-25436, A.P. Case No. 05-2027, W.D.N.Y. August 2, 2005)

**Page 7**

BK. 04-20226
AP. 04-2144

and *In re Hoyt* (Chapter 7 Case No. 03-20001, A.P. Case No. 05-2023, W.D.N.Y. February 8, 2006), we know that for the Court to deny a debtor's discharge because of a false oath or account: (1) the false oath or account must have been knowingly and fraudulently made, *see Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994); (2) the required intent may be found by inference from all of the facts, *see 6 L.King, Collier on Bankruptcy*, ¶727.04[1][a] at 40 (15th ed. rev. 2005); (3) a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge, *see In re Diorio*, 407 F.2d 1330 (2d Cir. 1969); (4) a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent, *see Bank of Miami v. Espino (In re Espino),* 806 F.2d 1001 (11th Cir. 1986); (5) the required false oath or account must be material; and (6) the required false oath or account may be a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination at a creditors meeting, *see In re Ball*, 84 B.R. 410 (Bankr. D.Md. 1988). Conversely, if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge.

**Page 8**

Case 2-04-02144-JCN   Doc 68   Filed 07/26/06   Entered 07/26/06 08:42:36   Desc Main
Document    Page 8 of 12

B.    **False Oaths or Accounts**

From the evidence produced at Trial and the pleadings and proceedings in Halperyn's bankruptcy case and in the Adversary Proceeding, the Court finds that Halperyn knowingly and fraudulently failed to schedule: (1) his interest in Hyperion; (2) that he was an officer of Tyler Art; (3) that he was jointly and severally indebted with Tyler Art to Rayfield Investment in the amount of approximately $125,000.00; (4) that he was the owner of the Mercedes, a finding that the Court makes in part based upon Rayfield's testimony, but also because that is the only logical explanation for Halperyn's complete failure to produce any documentary evidence to support any of his various versions of the disposition of the Mercedes; and (5) that he had at least a significant equitable ownership interest in Tyler Art.

As this Court has previously expressed in *Ptasinski*, although Courts are generally more concerned with the failure of the debtor to disclose an asset than with the failure to disclose a liability, this is not true in cases such as this case where the knowing failure to disclose a creditor is part of a fraudulent scheme to conceal an asset from the trustee or to prevent the trustee from fully investigating the existence or value of an asset. In this case, the failure to disclose the indebtedness to Rayfield Investment prevented the Trustee and other parties-in-interest,

Page 9

including the UST, from discovering the true relationship between Tyler Art, Hyperion, Rayfield Investment and Halperyn, as an officer, co-debtor with, and a legal and equitable owner of all or a portion of Tyler Art and/or a portion of its inventory. It is even significant that on his Schedule I, Halperyn listed himself as a manager of Style de Vie, rather than as a manager of Tyler Art doing business as Style de Vie.

As a sophisticated businessman, with B.S. and M.B.A. degrees from Syracuse University, who described himself at the Examination as an investment banker, these false oaths, except with respect to the ownership of the Mercedes, could only have been knowing and intentional and part of a fraudulent scheme by Halperyn to conceal his direct and indirect relationships with Tyler Art and Rayfield.

### III. Section 727(a)(3) Cause of Action

Section 727(a)(3) provides that the Court shall grant the debtor a discharge unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. In this case, if Halperyn, a sophisticated businessman, did in fact dispose of the Mercedes in connection with an investment or as a way to

raise money for living expenses, the two disposition stories testified to by Halperyn, it is inconceivable to this Court that he would not have created and kept or have been able to obtain any documentation to support the disposition of the Mercedes. His failure to have kept or produced any such documentation is a failure that warrants the denial of his discharge under Section 727(a)(3).

## IV. Miscellaneous

From the evidence produced at Trial and the pleadings and proceedings in Halperyn's Chapter 7 case and in the Adversary Proceeding, it is clear that he is not the honest but unfortunate debtor that the Bankruptcy Code and the Bankruptcy System have determined is entitled to a fresh start and a discharge of his debts. In fact, Halperyn is clearly a debtor who has played fast and loose with his assets and the reality of his financial affairs, especially with respect to Tyler Art.

## CONCLUSION

It has been proven by a preponderance of the evidence that Halperyn has made one or more material false oaths or accounts in completing the Initial Schedules and the Initial and Amended Statement of Affairs and in testifying at the Meeting of Creditors and the Examination. These false oaths or accounts could only have

been made by this debtor with fraudulent intent. Furthermore, there is no credible evidence that the false oaths or accounts were made by mistake, carelessness or inadvertence, or upon the honest advice of counsel. In addition, Halperyn has either made a false oath with respect to the ownership and disposition of the Mercedes, or he has failed to keep sufficient records of the disposition of the Mercedes so that the Trustee could determine that it was not an asset of the estate. For these reasons, the discharge of Halperyn is hereby denied pursuant to Section 727(a)(3) and Section 727(a)(4)(A).

    **IT IS SO ORDERED.**

                                                                  /s/
                                           **HON. JOHN C. NINFO, II**
                                           **CHIEF U.S. BANKRUPTCY JUDGE**

**Dated: July 26, 2006**